Allen, P.
The principal question in this case is whether the securities of Jonathan C. Gibson, who qualified as the administrator with the will annexed on the estate of John Beckham deceased, are bound by the alledged administration bond. On the 23d of November, 1831, the last will and testament of John Beckham, deceased, was exhibited to the County court of Culpeper, and proved by the oath of one of the subscribing witneses thereto; which was ordered to be certified. At the December term following, the executors named in the will refused to take upon themselves the burthen of the execution thereof; and the widow having relinquished her right of administration, on the motion of said Gibson, administration c. t. a. was granted to him on said estate, he having qualified and entered into bond with security according to law. At the December term of said court 1837, six years after the grant of administration, the said last will was again produced to the court and proved by another subscribing witness; and the codicil annexed to the will, having been proved to be in the handwriting of the testator, there being no subscribing witness to the *323 codicil, the same was ordered to be recorded. The administration bond is regular on the face thereof, conforming to the requisitions of the statute prescribing the form of a bond to be executed by an administrator c. t. a. Upon these facts it is insisted that the bond was void, because the court had no authority, as the matter stood at the time, to commit said estate to an administrator c. t. a.
The law in force when the will was first exhibited for probate, is to be found in the K. C. of 1819. 1 It. C. § 21, p. 379, provides that before granting a certificate of probate of any will the executor or administrator c. t. a., shall in open court take the oath set forth, and also give bond, &c.; and by the 23d section of the act it is declared, that the power of executors over their testators’ estates before probate of the will, is not thereby restrained, but shall continue as theretofore. These provisions of the act were so construed .by this court in Monroe v. James, 4 Munf. 194, as to mean that a sale by an executor named, who at the time had not qualified, and died before qualifying by giving bond and security, is void as against the executor who afterwards qualified; but it was said by Cabell judge, that as an executor derives his power from the will, at common law nothing was required to invest him with the full exercise of that power for almost every possible purpose, but an acceptance of the trust; and as he may become complete executor by giving bond, and ought to do so, after intermeddling with the estate, the law so far regards him as executor, as to consider his acts valid for the present; and they, would become irrevocably so provided he should perfect Ms character as executor, by afterwards giving bond. If he refuses or fails he is considered as having refused the office; and the refusal relates to the death of the testator. As to him the will is considered as having never been made. In consequence of the difficulty en *324 countered in this case the law was amended by the Code of 1849, to conform to the judicial construction. Code, ch. 30, § 1, p. 540, enacts that a person appointed executor, shall not have the power of executor until he qualifies as such, by taking the oath and giving, bond in the court in which the will is recorded, except that he may provide for the burial of the testator, pay reasonable funeral expenses, and preserve the estate from waste.
■ It is argued with much earnestness, that the record of the probate court shows that this will was not recorded. That ho one can have the powers of an executor until he qualifies in the court in which the will is recorded ; and therefore it is concluded, that the record of the will is the commission to appoint. The error of the argument, consists as it seems to me, in substituting the mode in which the authority is exercised for the authority itself; the correctness of the judgment of the court upon'a certain state of facts in the particular case, with the authority of the court to take cognizance of the subject matter submitted to it. The court of probate is a court of record, and a judgment rendered by it, upon a subject cognizablé before it, is conclusive, and cannot be questioned incidentally. These principles have been repeatedly adjudicated in a variety of cases in this court; and I am not aware of any conflict of decision in this tribunal, where the mere question of authority was involved. Oases have arisen upon the validity of bonds taken by such tribunals, where for some departure from the prescribed form, the bonds were held to be invalid, either for the particular purpose for which they were sued on, or void entirely. Ent there is no case which decides, that the validity of the bond can be impeached, where the authority to take it existed, and the bond was in due form. In the Commonwealth v. Jackson's ex'or, 1 Leigh 485, the form of the bond perhaps was unexceptionable ; but the Hustings court of Williamsburg was *325 acting upon a subject matter over which it could not -r -, take cognizance. Its jurisdiction did not attach, and its order and the bond taken by it were null and void. So in Manns v. Flinn, 10 Leigh 93, the court held that the grant of administration as upon an intestacy where a will exists, though not ostensible, was void, or a nullity quoad the executor. The appointment of an executor vests the personal estate in the -party so appointed. The legal title was vested in him. He derives his power from the will, and, as we have seen, at common law nothing was required but an acceptance of the trust, to invest him with almost full power for every possible purpose. The right thus conferred by the will could not be divested by a court of probate. The ease falls into that class, where the order is held to be void, because the subject matter was not within the cognizance of the court. That is to say that there should be the estate of a decedent and no representative to take charge of it. In that case there was a. representative taking under the will, capable under our statute of doing some acts before qualification, requiring only the qualification prescribed by statute to exercise full power for every purpose, and whose qualification related back to the death of the testator. Whether however the court did not go too far in holding in that case that the appointment was absolutely void, and this incidentally in a contest between other parties, might deserve serious consideration if the question should again arise; especially as the judges delivering opinions concede that payments made to an administrator in such case might have been good whilst the executor remains unknown; 1 Wms. on executors, 369 ; and do not seem to have had their attention called to the condition of the bond required of an administrator, by which he is -required to render up his letters of administration upon the appearance of a will. In view of the exception admitted and this provision of *326 the statute, it would be worthy of enquiry whether the committing the administration would in any sense be held void as it respected third persons whose rights would be affected thereby, however it might be in a contest with the executor. See on this head, 1 "Wins, on executors, HI; and for the propositions that the probate is merely operative as authenticated evidence, and not at all as the foundation of the executor’s title, for he derives all his interest from the will and the property vests in him from the testator’s death. See 1 Wms. on executors, p. 159. These are the only cases decided in this court to which we have been referred, where the bond or administration were treated as void for want of authority to act on the subject matter. In Fisher v. Bassett, 9 Leigh, 119, the true state of facts was not such as to justify the exercise of the authority in that case to grant administration. Tet as the court had general jurisdiction to grant administration, when there was an unrepresented estate of a dead man in question, the court having cognizance of the subject matter, must determine for itself whether the circumstances justify the exercise of its jurisdiction in the particular case; and the grant is valid until revoked or the order is reversed. So in Burnley v. Duke, 2 Rob. R. 102, upon a question of authority it was held, in conformity with Fisher v. Bassett, ubi, swpra, that where administration and administrations d. b. n. were granted by a court which upon the _ facts should not have taken jurisdiction, the grants were valid, the orders standing unreversed, and the grants unrevoked. And further that when the grant to the administrator d. b. n. expired by his death, and the estate was unrepresented, it was competent for the court which might in the first instance have rightfully exercised jurisdiction, to make a valid grant; and the sureties in the last administration bond were bound. In Hutcheson sheriff v. Priddy, 12 Gratt. 85, administration had been *327 committed to the sheriff before the expiration of three 1 # months from the death of the decedent; but it was held that the case fell within the principle of the cases referred to; and the grant was not void, although the court, having jurisdiction to commit an estate to the sheriff for administration, may have erred upon the facts in making the order at the time it was made. And in Andrews v. Avery, 14 Gratt. 229, it was decided that administration granted where the deceased lived and died out of the state and left no estate within it, is not void; the judge who delivered the opinion of the court remarking, that the subject matter being within the jurisdiction, of the court, to wit, the appointment of a personal representative to a decedent who is without one, the court making the appointment will be considered as having adjudged the question of jurisdiction in the particular case; and the order will not be void. A similar conclusion was arrived at in Cox v. Thomas, 9 Gratt. 323, as to a judgment of a circuit court upon a different matter, but where the authority of the court to aet came into question.
These seem to be all the cases in this court, where the authority of the court came directly into controversy; and tried by the principle so uniformly affirmed, what is the effect upon the ease under consideration. The order in question was made by a court whose general, jurisdiction over the subject matter and of this particular case is not questioned. There was a decedent and this court was the proper one to take probate of his will. A paper purporting to be the will of the deceased was ■exhibited at the November term 1831, for probate, and was proved by the oath of one of the three subscribing witnesses thereto; which was ordered to be certified.— The other subscribing witnesses were not examined, nor was any proof produced that the codicil revoking a legacy was in the handwriting of the testator. At the follow *328 ^erm ^ie court, the executors named in the will refused to accept, the widow relinquished her right to administration, and thereupon administration with the "^ll annexed was, on motion of Jonathan O. Gibson, committed to him, and he thereupon gave bond and qualified.
The will in this case was exhibited for probate before the passage of the act of 1834-5. Sess. acts, p. 43. In the case of Worsham’s adm’r v. Worsham’s ex’or, 5 Leigh 589, it was decided by the whole court, (forBroekenbrough who did not” sit, had decided the cause in the court below, and his sentence was affirmed,) that before the act aforesaid, a testament of personal estate might be well proved by a single witness. It was in consequence of this decision and at the suggestion of the court, that the act of 1834-5 was passed requiring the same proof in cases of wills of personalty as of realty. This will so far as the duties of the executor or administrator c. t. a. were concerned, was a testament of personal estate. The real estate was specifically devised. The court then had the case of a decedent, with the will exhibited of the testator so proved as to. justify the recording of the will as a will of personalty, and the gi ant of letters testamentary. That proof was entered on its record and, as the record recites, ordered to be certified. At the following term the executors refused to take upon themselves the burthen of the office, and the widow relinquished her right to administer; and then the estate was committed. The subject matter (Judge Moncure observes in Andrews v. Avery ubi supra), to bring a case within the jurisdiction of a court of probate, “is the appointment of a personal representative to a decedent who has none, ahd whose personal estate is therefore without an owner. The validity of an order making an appointment must depend on the existence of that state of facts.” By this refusal of the executors named, the *329 personal estate was left without an owner. It was the duty of the court to take some order for its preservation. There was no controversy about the will or administration, to remind them of the necessity or propriety of appointing a curator to take care of it, pending any such controversy. It is manifest that the executor named and the widow supposed the action of the court had placed the matter in a condition for administration; and I thiplc it equally clear the court so considered and adjudged when the estate was committed to an administrator c. t. a. The only matter required as to the body of the will was an order to recoi’d it, as a will of personalty, on the proof by one witness; though it would have been irregular, perhaps erroneous, to grant administration in the then state of the proof until action of some kind was had on the codicil which revoked a legacy. But this if ah error, was an error in the judgment of the court upon a question arising upon a matter of which they had full cognizance, and could not be enquired into incidentally. The order was never reversed, the grant remains unrevoked; by virtue of it, the administrator c. t. a. has possessed himself of the estate, and I think it cannot be alleged in favor of the sureties, that the grant was merely void. I think the principle of the cases referred to governs this case, and fully justify.this conclusion.
The position of the appellants does not receive much support, if any, from that class of eases cited, in which bonds taken by virtue of some statute were held to be invalid. For in this case the bond is regular, pursues the form prescribed by law for the bond of an administrator c. t; a. The objection is not that it is defective on its face, but that there was no authority to take it. In the cases bearing on this subject, some confusion has arisen from j ndges not at all times distinguishing between the words void and voidable or defective. But a *330 care^ examination of the cases themselves, and looking to the subject really discussed and the points decided UP fo® obscurity. With the exception of one case kereaftei' adverted to, it will, I think, be found, that there is no conflict in the decisions of this court on the subject, or discordance with the principle affirmed in the class of cases already commented on. In Stuart v. Lee, 3 Call 421, the bond was taken by a proper court and was made payable to the Governor, instead of the .justices. The suit was in the name of the successor of the governor; and the plaintiff assigned a breach for the benefit of the party injured. The bond was in the penalty of £10,000. As the law then was the bond should have been made payable to the justices, and the penalty prescribed was £1,000. The court decided that as the bond was not taken pursuant to law, no action could be maintained thereon by the plaintiff in his character of Governor or successor in office only. So in Branch v. Commonwealth, 2 Call 510, the bond was taken for collection of taxes under an act which had expired. It was held the sureties could not be made liable for taxes collected under a-subsequent law.. They were not liable under their contract. In Frazier v. Frazier’s ex’or, 2 Leigh 642, the decree was against the surety in an administration bond, taken on committing the estate to an administrator c. t. a. The bond executed was in the form of the bond prescribed for an administrator of intestate and not that for an administrator c. t. a., of course contained no condition for the benefit of legatees. The stipulation to administer the goods, &c., according to law, was held not to embrace the surplus assets payable to legatees or distributees; but only extended to disbursements made in the expenses of administration and the payment of debts; that if it went further and embraced legatees and distributees there would have been no necessity for the further provision *331 for the benefit of legatees and distributees. It was therefore held that upon this statutory bond no suit in law or equity could be maintained for the benefit of and at the relation of a legatee. The court did not decide that the bond was void or would have been voidable if put in suit by a party, as a creditor, for whose benefit there was a stipulation in the condition. Roberts v. Colvin, 3 Gratt. 358, followed Frazier v. Frazier, and held that as the bond in that case contained no provision for the benefit of creditors, the sureties were not liable.
Morrow v. Peyton, 8 Leigh 54, does decide the broad proposition that a bond not conforming to the requisitions of the statute wTas void as to all purposes. The case even supposing it should be recognized as a binding authority, would not affect materially the present case. Tor here the grant was to an administrator c. t. a., and the bond is such as the law requires in such case. In Morrow v. Peyton, after the death of an executor who had qualified, administration was committed to an administrator d. b. n. c. t. a., but the bond was in the form prescribed for administration d. b. n. of an intestate, instead of an administration d. b. n. c. t. a. The ■form of the bond adopted did contain a condition for the benefit of creditors; and creditors were suing; but the court in the decree says that the administration bond was void on the authority of Frazier v. Frazier, and the securities were not bound by it. Tucker T. towards the conclusion of his opinion merely remarks on that branch of the case, that the bond was void on the same authority. The great question in that case was whether, when two administrators execute a joint administration bond, one is surety for the other. Upon this proposition the three judges differed, each delivering a separate opinion.— Brockenbrough and Tucker holding the affirmative, Brooke the negative. On the other parts of the case the other judges concurred with Tucker. We have seen all *332 sa^ 011 T1613^011 ™-áer consideration, and it is clear tliat he was misled from a hasty consideration of ^113 case of Frazier v. Frazier. It certainly did not dec*^e ^ia^ bond.was void or invalid for any purpose provided for in the condition. But the decision and opinion of Green J. was carefully restricted to the case of the legatee suing, and for whom no provision had been made. Had not the court in Morrow v. Peyton, been misled by this mistake in the effect of the decision in Frazier v. Frazier, I do not for a moment suppose they would have decided that such a bond was void entirely and the sureties not bound by it.
In the United States v. Bradley, 10 Peters R. 343, the general question was discussed by Judge Story who delivered the opinion of the court. He draws the distinction between bonds given to parties who have a capacity to take, and bonds given to parties having no capacity to take. The former may be good in part, the latter are wholly void. And he further remarks that there is no distinction between bonds containing conditions not malum ún se, but illegal at common law; and those containing conditions which are illegal by express provision of statute. At common law a bond conditioned to do several things may be void for illegality as to one part, and yet be good as to the other part. 2 Thos. Coke p. 19, n. P. The same rule applies to bonds taken by virtue of a statute unless indeed the statute espressly or by necessary implication avoids it to all intents and purposes. Accordingly it was held in that case, in accordance with many English authorities, that the bond taken by a public officer having a capacity to take, with some good conditions and others not authorized by law, was valid to the extent of the good condition. So this court decided in Aylett v. Roane, 1 Gratt. 282, that a bond of indemnity taken according to the act of 1819, 1 B. O. ch. 134, § 25, p. 533, but omitting the provision *333 for tlie protection of the purchaser of the property as required by the act of 1828, Sup. R. Code 272, was a good statutory bond to protect the sheriff from the aetion of the claimant of the property, the- bond con-4 4 taming the condition required by law for his protection.
In Almond, &c., v. Mason, &c., 9 Gratt. 700, the will after a bequest of property real and personal to 1ns wife for life or widowhood, directed that at her death or marriage, his executor should sell the whole of his estate and divide the proceeds. One of the executors died, the power of the other was revoked, and the estate was committed to an administrator d. b. n. c. t. a. But the bond he executed did not embrace land as the law required where the executor was- authorized to sell real estate. Tlie court below dismissed the bill as to the sureties. This court reversed the decree, holding that as after the termination of the life estate, the administrator took possession of and sold the personal estate, and as the bond contained a condition for the benefit of legatees, the sureties were bound so far as the goods, chattels and credits would extend. So in Pratt v. Wright, 13 Gratt. 175, it was decided that although the condition in a guardian’s bond was not as extensive as the statute requires, yet as it relates to a part of his duties, the bond is not void, but binds the obligors to the extent of the condition. Daniel J. in his opinion refers to United States v. Bradley, ubi supra, and cites many other authorities to the same effect. It is manifest therefore that this court in Morrow v. Peyton, intended to place their decision on this point upon the authority of Frazier v. Frazier alone, supposing through inadvertence, and because the novel and interesting question as to the liability of the executors under the joint bond had diverted attention from the minor questions arising on the record, that Frazier v. Frazier ruled this branch of the case *334 I do not therefore regard Morrow v. Peyton as an au_ . . . thonty on this proposition.
-^01’ *s ^ necessary to invoke the aid of another class cases c^eA ™ argument to support the validity of this bond. Oases where there was a clear capacity to take such bond, and the bond fulfilled all the requirements of the statute; but contained recitals essential to its validity, and it was held that the obligors were estopped from denying the truth of such recitals. • Of this class was the case of Franklin v. Depriest, 13 Gratt. 257; Monteith, sheriff v. Commonwealth, 15 Gratt. 172, and many other cases referred to in the argument.
From these three classes of cases decided by this court, may be deduced the following, principles: First, that where a court has cognizance of the subject matter, its .judgment, though it might be erroneous, is not void; it is binding until set aside or reversed, and cannot be questioned incidentally; acts done and bonds taken under it, bind the obligors and sureties as well as principals. Second, where the court or officer has authority or capacity to take a bond, and makes a mistake by omitting some condition prescribed, or inserting a condition not authorized or illegal, unless the statute by express words or necessary implication makes it wholly void, the bond is not void; the good shall not be vitiated by the bad, and the bond may be sued on so far as the conditions are good as a statutory bond. Third, where the court has cognizance of the subject matter or capacity to take a bond, and takes a bond which on its face is valid, but contains a recital of facts necessary to its validity, as in the cases referred to of the election and induction into office of a sheriff, the presence of the justices named as obligors and the like; the obligors shall be estopped from denying the truth of such recitals. These principles firmly established are essential to the security of the public and individuals. Bonds of sheriffs, clerks and other *335 officers of administrators, &e., are taken in the absence of those who may be most affected by the acts of such functionaries, and should be sustained unless clearly made invalid by law. flor do I perceive how the surety, as has been argued, can occupy any higher ground than his principal. It is his intervention which has enabled the principal to act; and he should be bound to the extent of his obligation for him.
On the whole I am of opinion, that the order of the court committing administration t. c. a. to said Jonathan C. Gibson, was not void, and therefore the bond taken from him was valid and binding on all the obligors.
The other judges concurred in the opinion of Allen P.
Decree affirmed.